IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LARRY E. PATTERSON, *et al.*,

    Plaintiffs,

v.                                                     Civil Action No. **3:08CV490**

TIMOTHY M. KAINE, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiffs Larry Patterson, Elmo Reid, and James Clark, proceeding *pro se*, bring this 42 U.S.C. § 1983 action, for which they also seek class certification.[1] The matter is before the Court for evaluation pursuant to 28 U.S.C. § 1915A(b), 42 U.S.C. § 1997e(g). Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 636(b) and 1343(a)(3).

### Preliminary Review

This Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

---

[1] "[I]t is plain error to certify a class when a pro se litigant seeks to represent the class." *Lescs v. Martinsburg Police Dep't*, 138 F. App'x 562, 564 (4th Cir. 2005) (*citing Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). Accordingly, it is RECOMMENDED that Plaintiff's request for class certification be DENIED.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle only applies to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs can not satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl.*

*Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary of Allegations and Claims

Plaintiffs were convicted of violent offenses that occurred prior to January 1995, and are eligible for parole under Virginia Law.[2] The Virginia Parole Board ("VPB") has repeatedly determined that Plaintiffs were not suitable for parole because of, *inter alia*, the serious nature and circumstances of their crimes. (Compl. Ex. I.)[3] Plaintiffs claim their rights were violated because, subsequent to Plaintiffs' convictions, Defendants have implemented an unofficial policy of denying parole to any prisoner convicted of a violent offense. Plaintiffs allege that this policy

---

[2] Larry Patterson was convicted in 1992 of an unspecified violent offense and sentenced to a sixty-five year term of imprisonment. Elmo Reid was convicted in 1988 of a violent felony and received two life sentences. James Clark was convicted in 1989 of a violent felony and received a life sentence. (Compl. ¶¶ 18-20.)

[3] Patterson was denied parole for the sixth time on January 5, 2008, on the grounds that his crime was of a serious nature and he was unlikely to comply with the conditions of this parole because of prior failures under community supervision. Reid was denied parole for the second time in four years on October 26, 2007, for identical reasons. Clark was denied parole for the fifth time on October 16, 2007, because of the serious nature of his offense. (Compl. ¶¶ 18-20.)

precludes the VPB from weighing other statutorily mandated factors in making parole suitability determinations. Plaintiffs believe that this policy was adopted to obtain federal funding under the Violent Offender Incarceration Truth-In-Sentencing Grant Incentive ("VOITIS"), which requires that prisoners convicted of certain violent offenses serve an average of 85% of their sentences.[4] *See* 42 U.S.C. § 13701 *et seq.*

Plaintiffs make the following claims:[5]

| | |
|---|---|
| Claim 1 | Defendants violated the Ex Post Facto clause[6] by subjecting Plaintiffs to "an unlawful decision for which adverse early parole release determinations are issued." |
| Claim 2 | Defendants violated Plaintiffs' rights under the Due Process Clause[7] by prolonging their incarceration for the purpose of obtaining increased federal funding. |
| Claim 3 | Defendants violated Plaintiffs' Eighth Amendment[8] rights by subjecting Plaintiffs to an increased term of incarceration before granting them parole. |
| Claim 4 | Defendants violated Plaintiffs' rights under the Americans with Disabilities Act and the Rehabilitation Act. |

(Compl. ¶¶ 59-61.) Plaintiffs request injunctive and declaratory relief.

---

[4] The 85% requirement applies to offenders convicted of a "part 1 violent crime," which includes only convictions for "murder and nonnegligent manslaughter, forcible rape, robbery, and aggravated assault." 42 U.S.C. § 13701(2).

[5] Plaintiff's claims have been renumbered for analytical clarity.

[6] "No . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[8] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII.

4

**Claim 1 – Ex Post Facto Violation**

Plaintiffs argue that "Defendants, by subjecting Plaintiffs to an unlawful decision for which adverse early parole release determinations are issued . . . have brought about an ex post facto enhancement of the punishment range imposed upon all Plaintiffs by the State sentencing Courts." (Compl. ¶ 61.) The United States Constitution prohibits federal and state governments from passing any *ex post facto* law. U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1. An *ex post facto* law is "'any statute which . . . makes more burdensome the punishment for a crime, after its commission.'" *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (*quoting Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)). Changes to parole laws that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" violate the *Ex Post Facto* clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995).

Throughout the Complaint, Plaintiffs consistently–and incorrectly–contend that the alleged blanket policy of denying parole to violent offenders violates various provisions of the Code of Virginia, effectively increasing their maximum sentences. Plaintiffs cite to sections 53.1-139 and 53.1-140 of the Virginia Code for the proposition that there are, or were at the relevant time, "statutorily mandated factors" that the VPB must consider in assessing suitability for release. (Compl. ¶ 4.) These provisions, which have undergone no substantive changes during the relevant period, describe the powers and duties of the Chair of the Parole Board and the Director of the Department of Corrections. The Chair must: preside at all meetings of the Board; exercise supervision over prisoners conditionally pardoned by the Governor; coordinate the activities of the Board; sign the Board's annual reports; and serve as spokesman for the Board. Va. Stat. § 53.1-139. The Director of the Department of Corrections must: direct and

5

supervise the work of all probation and parole officers; effectuate the orders, rules and regulations of the Parole Board; prepare lists of suitable parole officers for appointment by the circuit courts; and coordinate with the VPB the activities of the Department of Corrections that relate to parole. Va. Stat. § 53.1-140. Plaintiffs also cite section 53.1-134 (establishing a five-person parole board whose members are appointed by and serve at the pleasure of the Governor), section 53.1-154 (governing the times at which the VPB may review cases), and section 53.1-155 (prohibiting the VPB from releasing any offender without first conducting an investigation of his history and conduct in prison, determining that his release on parole is not incompatible with the interests of society, and notifying any victims of their right to submit evidence of the impact on them of the prisoner's release) of the Virginia Code. None of the provisions cited by Plaintiffs curtail the VPB's discretion to deny parole based solely on "[a] single criterion–the nature of the present offense." (Compl. ¶ 42.)

Plaintiffs rely also on section 53.1-136. This provision reads:

> In addition to the other powers and duties imposed upon the Board by this article, the Board shall:
> 1. Adopt, subject to approval by the Governor, general rules governing the granting of parole;
> 2. Release on parole, in accordance with its rules, for such time and upon such terms and conditions as the Board shall prescribe, persons convicted of felonies and confined under the laws of the Commonwealth in any correctional facility in Virginia when those persons become eligible and are found suitable for parole;
> 3. Revoke parole and order the reincarceration of any parolee when, in the judgment of the Board, he has violated the conditions of his parole or is otherwise unfit to be on parole;
> 4. Issue final discharges to persons released by the Board on parole when the Board is of the opinion that the discharge of the parolee will not be incompatible with the welfare of such person or of society;
> 5. Make investigations and reports with respect to any commutation of sentence, pardon, reprieve or remission of fine or penalty when requested by the Governor; and

6

> 6. Publish monthly a statement regarding the action taken by the Board on the parole of prisoners. The statement shall list the name of each prisoner considered for parole and indicate whether parole was granted or denied.

Va. Stat. § 53.1-136 (West 1991). This statute, contrary to Plaintiffs' assertion, does not contain any general rules governing parole suitability. (*See, e.g.*, Compl. ¶ 50.) Indeed, it specifically delegates to the VPB and the Governor the power to make rules governing parole. Thus, no basis exists for concluding that Plaintiffs may rely on these statutes to state a claim that any change in administrative policy regarding parole suitability would contravene Virginia statutes.

Plaintiffs also fail to show that any change in Virginia parole policy could violate the *Ex Post Facto* Clause. The Supreme Court has found a change to parole policy may violate the *Ex Post Facto* Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." *Garner v. Jones*, 529 U.S. 244, 251 (2000). Because not all policy statements actually restrict a parole agency's discretion to deny parole, the *Ex Post Facto* clause is implicated only by changes to legislative rules, and not merely changes in "an administrative *policy* that was in effect at the time of a criminal's underlying offenses." *Warren v. Baskerville*, 233 F.3d 204, 207 (4th Cir. 2000) (emphasis added) (*citing United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992); *Prater v. U.S. Parole Comm'n*, 802 F.2d 948, 951 (7th Cir. 1986)); *see also United States v. Restrepo-Suares*, 516 F. Supp. 2d 112, 117 (D.D.C. 2007) (discussing circuit split on whether *Garner* applies to all parole regulations or only legislative rules). Legislative rules "ha[ve] the force of law." *Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989) (citing cases). Legislative rules stand in contrast with interpretive rules, which do not implicate the *Ex Post Facto* clause. *Ellen*, 961 F.2d at 465. "'[I]nterpretive rules simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of

7

existing duties.'" *Id.* (alteration in original) (*quoting Jerri's Ceramic Arts, Inc*, 874 F.2d at 207). They are "guides, and not laws: guides may be discarded where circumstances require; laws may not." *Prater*, 802 F.2d at 954 (internal quotations omitted). For example, in *Prater*, the fact that the United States Parole Commission retained the discretion to overrule the federal parole guidelines and grant or deny parole led the United States Court of Appeals for the Seventh Circuit to conclude that the federal parole guidelines did not have the force of law. *Id.*

"Virginia courts have made clear that the Virginia Parole Board is 'given absolute discretion in matters of parole.'" *Robinson*, 366 F. Supp. 2d at 371 (*quoting Garrett v. Commonwealth*, 415 S.E.2d 245, 247 (1992)). This Court has ruled that the Parole Board's parole regulations do not "impinge[] upon the absolute discretion of the Board when acting on parole applications." *James v. Robinson*, 863 F. Supp. 275, 277 (E.D. Va. 1994). Plaintiffs' allegation of the existence of an unofficial policy to deny parole does not suggest that the policy has the force of law. Plaintiffs similarly have failed to demonstrate that the regulations in effect at the time of their offenses had the force of law. Accordingly, it is respectfully RECOMMENDED that Claim 1 be DISMISSED with respect to Plaintiffs Patterson, Reid, and Clark.

### Claim 2 – Denial of Due Process

Plaintiffs claim that they were denied due process because Defendants denied parole for an impermissible reason, specifically in order to obtain federal funding for Virginia's prisons. (Compl. ¶ 59.) The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify

8

whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). Where government action impacts a protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible .... not all situations calling for procedural safeguards call for the same kind of procedure").

### A. Existence of a Protected Liberty Interest

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220-21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). "With no constitutional right to parole per se, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (*quoting Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (en banc).

To demonstrate the existence of a state-created liberty interest, Plaintiffs must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08cv00687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint challenged meets either prong of this threshold, Plaintiff must next show that the Commonwealth of Virginia, "grants its inmates, by regulation or statute, a protected liberty interest in remaining free from that restraint." *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000); *see Greenholtz*, 442 U.S. at 10-11 (1979); *Frazier v.*

9

*Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996); *Smith v. Johnson*, No. 7:08cv00514, 2008 WL 4960436, *3 n. 2 (W.D. Va. Nov.19, 2008).

Plaintiffs appear to have alleged that Defendants have inflicted a deprivation that inevitably affects the duration of their sentences. Thus, the Court must consider whether Virginia law grants any liberty interest in parole. "A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire, or a unilateral hope." *Gaston*, 946 F.2d at 344 (citation omitted). State laws create a liberty interest only when the statute's language "plac[es] substantive limitations on official discretion." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). The United States Court of Appeals for the Fourth Circuit explained the fairly exacting nature of this requirement in *Slezak* as follows:

> What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable ... classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

*Id.* at 595.

The laws at issue here fall short of the exacting requirements for demonstrating a state-created liberty interest. As discussed above, Virginia's statutory parole scheme delegates to the Governor and VPB complete authority to promulgate rules governing parole suitability. Accordingly, the Fourth Circuit has squarely held that Virginia law does not create a liberty interest in discretionary parole release, or in the procedures whereby the VPB reaches its decision whether to grant parole. *See Hill v. Jackson*, 64 F.3d 163, 170-71 (4th Cir. 1995) (explaining

that "'that which must be found mandated by state law [in order to support a due process claim] is not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive *results* once prescribed procedures have revealed that substantive predicates have been established'" (alteration and emphasis in original) (*quoting Slezak*, 21 F.3d at 594)); *Gaston*, 946 F.2d at 344. Plaintiffs have not demonstrated that they enjoy any state-created liberty interest in parole.

## B. Constitutionally Mandated Procedures

Moreover, even if Plaintiffs did enjoy a liberty interest in parole, they would not prevail because the VPB has complied with all constitutionally mandated procedures. The Fourth Circuit has held that "inmates are entitled to no more than minimal procedure," *Vann*, 73 F.3d at 522, which requires only that the parole authority furnish to the prisoner a "written statement of its reasons for denying parole." *Franklin v. Shields*, 569 F.2d 784, 797 (4th Cir. 1977) (en banc); *see also Robinson v. Fahey*, 366 F. Supp. 2d 368, 371-72 (E.D. Va. 2005) (explaining that right to an explanation for denial of parole does not create the right to judicial review of the proffered reason for the denial). By giving Plaintiffs a written statement of its reasons for denying parole, the VPB complied with the minimal due process requirements that would exist if Virginia law did in fact create a liberty interest in parole release. *See Vann*, 73 F.3d at 522 (*quoting Franklin*, 569 F.2d at 801). Plaintiffs' submissions show that the parole board denied Plaintiffs parole because the serious nature of their crimes indicated they were a risk to public safety. Additionally, Defendants Patterson and Reid had previously failed to complete the terms of their community supervision, indicating that they would likely violate the terms of their parole. (Compl. Ex. I.) Thus, the VPB did not violate Plaintiffs' due process rights in the course of

11

denying them parole. It is therefore RECOMMENDED that Claim 2 be DISMISSED with respect to Plaintiffs Patterson, Reid, and Clark.

### Claim 3 – Eighth Amendment Claim

Plaintiffs claim Defendants violated their Eighth Amendment rights, inflicting Cruel and Unusual Punishment "by subjecting Plaintiffs to an increased term of minimum 'actual custody' before the Plaintiffs can be released into 'structural custody' (parole release)." (Compl ¶ 60.) Incarcerating an inmate after the expiration of his sentence can violate the Eighth Amendment, but only when done intentionally or with deliberate indifference to an inmate's rights. *Sample v. Diecks*, 885 F.2d 1099, 1109-10 (3d Cir. 1989). When parole grants are not mandatory, but rather committed to the discretion of a parole agency, denial of parole does not constitute cruel and unusual punishment. *Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir. 1992); *see also Franklin v. Reilly*, No. 1:08CV82, 2009 WL 86550, *3 (N.D. W. Va. Jan 9, 2009) (denying Eighth Amendment claim based on parole denial where parole board's decision was discretionary and prisoner was not held beyond termination of sentence). Requiring Plaintiffs to serve the unexpired portion of their sentences does not constitute cruel and unusual punishment. It is therefore RECOMMENDED that Claim 3 be DISMISSED with respect to Plaintiffs Patterson, Reid, and Clark.

### Claim 4 – Americans with Disabilities and Rehabilitation Acts

Plaintiffs claim that "Defendants . . . have deprived Plaintiffs [of] the protections delineated under the Americans with Disabilities Act & Rehabilitation Act ("ADA") (due to Plaintiffs' status: incarcerated felons, significant reduction of substantial gainful rehabilitative activities, and decline of financial earning power)." (Compl. ¶ 60.) Because incarceration is not

12

"a physical or mental impairment that substantially limits one or more major life activities" as defined under the ADA, Plaintiffs are not covered by either provision. 42 U.S.C. § 12102(1); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268-269 (4th Cir. 2001); *see also* 29 C.F.R. §§ 1614.203(b), 1630.2(h), (i).[9] It is therefore RECOMMENDED that Claim 4 be DISMISSED with respect to Plaintiffs Patterson, Reid, and Clark.

Plaintiffs are advised that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to timely file specific objections to the Report and Recommendation may result in the entry of an Order dismissing the complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

If Plaintiffs wish to file an amended complaint to correct the deficiencies described above, they must submit an amended complaint within fourteen (14) days of the date of entry hereof. *See Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981). Such complaint must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to each claim against each defendant. Plaintiffs must also state what civil rights they believe each defendant violated and explicitly state how said defendant's actions violated each constitutional

---

[9] It is also highly doubtful that consideration for parole is within the Rehabilitation Act or ADA's coverage, which is limited to employment and the provision of public services, accommodations, and transportation. Moreover, given that courts may not review the reason for denial of parole, *Robinson*, 366 F. Supp. 2d at 371-72, it would be inappropriate to conclude that any prisoner denied parole was an individual that "meets the essential eligibility requirements," 42 U.S.C. § 12131(2), for a parole program, as required by 42 U.S.C. §12132.

13

right. Any amended complaint will supplant the current complaint and all prior submissions. The amended complaint must stand or fall of its own accord.

The Clerk is DIRECTED to send a copy of the Report and Recommendation to each Plaintiff.

And it is so ORDERED.

                                                   /s/
                                           M. Hannah Lauck
                                           United States Magistrate Judge

Date: 12/3/09
Richmond, Virginia